**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROXANA D., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-6209 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Roxana D.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment [Dkt. 15] is DENIED and Defendant's motion for summary judgment [Dkt. 19] is GRANTED. The final decision of the Commissioner is affirmed.

**1. Procedural History**

On June 13, 2022, Plaintiff protectively filed an application for disability and disability insurance benefits, alleging disability beginning March 30, 2017, and a Title XVI application for supplemental security income on June 13, 2022. [Administrative Record ("R.") 17.] The claim was denied initially and on reconsideration. *Id.* On June 26, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. [R. 17-33.] The Appeals Council denied review on April 14, 2025 [R. 4], rendering the ALJ's June 26, 2024 decision the

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

final decision of the Commissioner. 20 C.F.R. § 404.981. On June 4, 2025, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.][2]

**2. The ALJ's Decision**

In her June 26, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 17–33.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [R. 19.] At Step Two, the ALJ found Plaintiff had the severe impairments of diabetes with neuropathy and obesity. [R. 20.] The ALJ found all other impairments non-severe, either because they cause no more than minimal limitations and/or have not or are not expected to last at a severe level for a continuous period of twelve (12) months. *Id.* At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). [R. 23.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: "[N]o climbing ladders, ropes or scaffolds; no working around unprotected heights or unprotected dangerous moving machinery; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; frequent pushing/pulling with the upper extremities; no concentrated exposure to vibrations; frequent handling and fingering." [R. 24.] At Step Four, the ALJ concluded Plaintiff was unable to perform any past relevant work. [R. 31.] At Step Five, after considering the Plaintiff's age, education, work

[2] Effective October 1, 2025, due to the lapse of congressional appropriations funding, all civil litigation involving as a party the United States of America, its agencies, its officers or employees and/or any other party represented by the Department of Justice or the United States Attorney's Office was immediately suspended, postponed, and held in abeyance continuing until funding for federal government operations was fully restored. [Dkt. 14.] Funding was restored and employees returned for work on November 13, 2025; accordingly, the stay was lifted on November 14, 2025. [Dkt. 17.]

experience and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. *Id.* Specifically, the ALJ determined Plaintiff would be able to perform the requirements of call out operator (DOT# 237.367-014, SVP 2, sedentary), order clerk (DOT# 209.567-014, SVP 2, sedentary), and bench packer (DOT# 559.687-014, SVP 2, sedentary). [R. 32.] Accordingly, the ALJ found Plaintiff was not disabled from the application date through the date of the decision. [R. 33.]

**3. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nonetheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, 173 F.4th 886, 891 (7th Cir. 2026). Finally, while reviewing a commissioner's decision, the court does not second-

guess the ALJ's judgment—the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

## 4. Discussion

Plaintiff contends the ALJ erred by failing to (1) provide a logical bridge between the evidence and the RFC, (2) properly evaluate the medical opinions of Drs. Ranga Reddy and James LaFata, and (3) properly evaluate Plaintiff's testimony. The Court disagrees on all accounts.

### a. The ALJ Built a Logical and Accurate Bridge between the Evidence and the Limitations in the RFC

#### (i) Manipulative Ability

Plaintiff claims the ALJ "failed to explain what evidence supported the RFC's limitations," for frequent handling and fingering as opposed to occasional handling and fingering. [Dkt. 16 at 7-8.] Plaintiff further alleges the ALJ failed to even discuss Plaintiff's manipulative abilities beyond two cursory references. [Dkt. 16 at 9.] Additionally, despite the ALJ's RFC contradicting the opinion of State Agency medical examiner Dr. LaFata (who included no limitation on fingering and handling [R. 136]), Plaintiff argues neither the ALJ nor Dr. LaFata provided the logical bridge necessary to find for this particular limitation, as opposed to a more restrictive one. [Dkt. 16 at 8-9.] However, the Court must read the ALJ's opinion as a whole. *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Here, it is clear the ALJ relied on more than merely Dr. LaFata's opinion in making her RFC determination. Additionally, as the Commissioner aptly points out, even if the ALJ erred by issuing an RFC with frequent handling and fingering limitations, this error would be in Plaintiff's favor, as the ALJ imposed *more* limitations than suggested by Dr. LaFata. [Dkt. 19 at 4-5; R. 29.]

The Court finds the ALJ's RFC to be supported by substantial evidence. *Biestek*, 587 U.S. 97. In determining Plaintiff's RFC, the ALJ considered Plaintiff's non-severe impairments, including Plaintiff's carpal tunnel syndrome and Dupuytren's contracture of the left hand, in addition to Plaintiff's diabetic neuropathy and obesity. [R. 20.]. The ALJ detailed sections of Plaintiff's medical records related to these impairments and noted (i) there was no documentation of significant impairment of hand function despite these diagnoses; and (ii) Plaintiff never followed up on nor sought further treatment for these non-severe impairments. *Id.*

Plaintiff did document an EMG showing severe large fiber sensorimotor polyneuropathy with primarily demyelinating findings affecting all four extremities, consistent with type 2 diabetes mellitus. *See*, *e.g.*, [R. 615, R. 896.] Plaintiff also testified to having problems using her hands while driving [R. 72], preparing meals [R. 83], and brushing her teeth. [R. 87.] The ALJ considered and accommodated these symptoms with a limitation to frequent handling and fingering. [R. 25, 28.] Despite finding Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with the medical evidence [R. 25], the ALJ accorded Plaintiff the benefit of reasonable doubt and limited Plaintiff to frequent handing and fingering "[t]o further accommodate her pain and decreased sensation in her extremities[.]"[3] [R. 28.]

There is little evidence in the medical record showing Plaintiff's manipulative abilities were limited beyond a frequent amount of handling and fingering. Neither State Agency medical examiner reported any manipulative limitation. [R. 107-109, 117-19, 135-37.] Consultative examiner, Dr. Christen Tibbs, found Plaintiff's "ability to perform fine and gross manipulation normal bilaterally." [R. 1537.] While carpal tunnel syndrome and Dupuytren's contracture were discussed throughout the record [*see*, *e.g.*, R. 684 (carpal tunnel), R. 602 (Dupuytren's

---

[3] "Frequent" means the task is present from one-third to two-thirds of the workday. SSR 83-10.

contracture)], Plaintiff never sought surgical treatment following a referral to orthopedics nor did she seek treatment for her carpal tunnel syndrome. [R. 20, 25, 83.] However, Plaintiff was shown exercises by a physical therapist for her hands that she does every day. [R. 25.]. The ALJ noted this conservative treatment in her decision and ultimately found that greater limitations were not warranted. [R. 20, 25, 28-29.] *See also Anthony G. v. Saul*, No. 17-cv-4393, 2020 WL 439964, at *10 (N.D. Ill. 2020) (collecting cases) ("[T]he Seventh Circuit has held it is reasonable for an ALJ to consider a claimant's conservative treatment.").

To the extent greater limitations are sought, it is the Plaintiff's burden to produce evidence in the medical record showing why those limitations would be appropriate. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). However, Plaintiff cited only her own testimony, medical records referring generally to neuropathy, and the EMG study, all of which were considered by the ALJ. [R. 28.] As the Court declines to re-weigh evidence, it cannot conclude the ALJ should have included additional limitations. *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023). The Court finds that the ALJ supported her RFC assessment with substantial evidence and built a logical and accurate bridge between the evidence and the RFC.[4]

**(ii) Incontinence**

Plaintiff also alleges the ALJ failed to consider symptoms of urinary and fecal incontinence in the RFC determination. [Dkt. 16 at 10-11.] Plaintiff bears the burden of proof through Step Four. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). Plaintiff must show through the medical record that the alleged symptom is connected to a medically determinable impairment and that the impairments affect her ability to work. *Sandra S. v. King*, No. 23-cv-01629, 2025 WL 327778, at

[4] Even if Plaintiff were correct and the Court finds the ALJ erred on this issue (it does not), the ALJ notes that one of the three positions the Vocational Expert named, call out operator (DOT# 237.367-014), requires only occasional fingering and handling, which was less than the RFC called for. [R. 32.]

*3 (N.D. Ill. 2025); *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). Plaintiff has not met this burden here.

The medical record, though somewhat scant on the issue, shows that in August 2022, Plaintiff had a urologic consultation with Dr. Sean George, who concluded she had a complete bladder evacuation (a normal result) at the time. [R. 536.] Nonetheless, he requested she follow up on an as-needed basis, as he speculated her diabetic neuropathy could cause difficulty with bladder evacuation. [R. 538.] There's no indication in the record Plaintiff ever followed up, and subsequent notes on the issue prescribed "[c]onservative management for now." [R. 518].[5] As to fecal incontinence, Plaintiff was referred to a gastrointestinal specialist at a May 2022 visit. [R. 573.] It is unclear if she ever followed up with the specialist. Though Plaintiff does not refer to these records in her brief [Dkt. 16 at 10–11], it appears her incontinence is at least possibly associated with her diabetic neuropathy, as suggested by Dr. George. [R. 538.] However, Plaintiff failed to adequately establish that this symptom occurred at a severity or frequency that would affect her ability to remain on-task at work, as is her burden. *Thorlton*, 127 F.4th at 1081. Although the ALJ only noted Plaintiff's testimony that the urologist told her "everything was fine" [R. 25] and omitted these visits in her opinion, the ALJ is not required to "provide a complete written evaluation of every piece of testimony and evidence," especially when it does not garner support for additional limitations in the RFC. *Schmidt v. Barnhart*, 395 F.3d 737, 743 (7th Cir. 2005).

Yet, the ALJ did note Plaintiff suffers urinary and fecal incontinence about once a month and that it may be related to her cycle. [R. 25, referring to R. 91.] However, Plaintiff alleges the ALJ did not "discuss the duration of these episodes, how often Plaintiff would have accidents

[5] At the same August 2022 visit, the notes reflect that Plaintiff had allegedly had, at some unspecified time, "a vaginal ultrasound at an outside center revealing incomplete bladder evacuation." [R. 537.] While it is unclear which specific ultrasound Plaintiff refers to, the Court has located a record where a small fibroid was found on a November 2021 pelvic ultrasound. [R. 1939-40.] No specific issues with urinary or renal incontinence were mentioned. [*Id.*].

during these episodes, whether she would require time to change or clean herself after an accident, and how the foregoing would affect her ability to remain on-task at work." [Dkt. 16 at 10-11.] Again, this is Plaintiff's burden. As the Commissioner points out [Dkt. 19 at 7-8], Plaintiff and her counsel had the opportunity to ask the Vocational Expert further questions about whether any undergarment accommodation or limitation would be necessary, and they chose not to pursue the line of questioning. [R. 52.] Absent evidence in the record to the contrary, the ALJ properly determined Plaintiff's condition could be managed by adult protective undergarments [R. 28] and the normal amount of time off-task every job allows. *See* [R. 99-100].

The Court finds the ALJ properly evaluated Plaintiff's RFC in line with Social Security Ruling ("SSR") 96-8p and the ALJ built a logical and accurate bridge between the evidence and the ultimate RFC which did not support additional limitations for Plaintiff's incontinence.

**b. The ALJ Properly Evaluated the Medical Opinions of Drs. Reddy and LaFata**

Plaintiff next alleges the ALJ failed to properly evaluate the medical opinions of State Agency medical consultants Dr. Reddy and Dr. LaFata, claiming the ALJ's evaluation of these opinions was internally inconsistent. [Dkt. 16 at 11-12.] Drs. Reddy and LaFata included a number of sitting and standing limitations in their evaluations in large part because Plaintiff used a cane during the examinations. [R. 29, 107-108, 135-36.] The ALJ found the physicians' opinions persuasive to the extent they limited Plaintiff to sedentary work, with limitations on postural activities. [R. 29.] However, the ALJ found both opinions unpersuasive as to the requirement that Plaintiff required a cane to ambulate. *Id.* For the reasons discussed below, the Court does not find the ALJ's evaluation to be internally inconsistent.

In reviewing a medical opinion, the regulations merely require an ALJ to articulate how persuasive he or she found a medical opinion and only discuss the supportability and consistency of the opinion with the record (though the ALJ evaluates several other factors as well). 20 C.F.R.

§ 404.1520c(b). Plaintiff does not argue that the ALJ failed to meet this standard. Rather, Plaintiff claims the ALJ's evaluation was internally inconsistent because the ALJ rejected the doctors' findings that Plaintiff required a cane to ambulate but did not reject the doctors' other findings that were based on, or appeared to be based on, Plaintiff's use of a cane. [Dkt. 16 at 12.] The Court does not find the ALJ's evaluation to be "internally inconsistent." An ALJ is required to consider the consistency of medical opinions with the other medical and non-medical evidence in the record. 20 C.F.R. § 404.1520c(c)(2). The ALJ's decision reviewed holistically demonstrates the ALJ not only considered the consistency of Drs. Reddy and LaFata's opinions with the evidence of record but also appropriately built a logical and accurate bridge for her finding. Though Drs. Reddy and LaFata may have relied, in part, on Plaintiff's use of a cane in determining the sitting, standing, pushing, and pulling limitations which the ALJ ultimately found supported a limitation to sedentary work with additional limitations on postural activities [R. 29], the ALJ also considered Plaintiff's testimony, EMG testing, medical records from treating providers, and additional evidence of record supporting such upper extremity and sedentary limitations in the RFC. *See, e.g.*, [R. 24-28.] Similarly, the ALJ considered Plaintiff's lack of consistent cane use against the doctors' findings that Plaintiff required a cane for ambulation. *Id*. This does not reflect internal inconsistencies in the ALJ's evaluation but rather reasoned analysis against the record as required by the regulations. Accordingly, the Court finds the ALJ properly evaluated the medical opinions of Drs. Reddy and LaFata.

However, even if the ALJ's evaluation of the medical opinions here were "internally inconsistent," such error would be harmless. An ALJ revising the RFC to require the use of a cane would have no impact on Plaintiff's ability to work a sedentary job, just as the Vocational Expert already testified. [R. 99.] *Spiva v. Astrue*, 682 F.3d 346, 353) (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is

overwhelmingly supported by the record…then remanding is a waste of time.”). Thus, this argument would not be a basis for remand even if the Court found the ALJ’s decision internally inconsistent.

**c. The ALJ Properly Evaluated Plaintiff’s Credibility**

Finally, Plaintiff argues the ALJ failed to reasonably assess her testimony at the administrative hearing. [Dkt. 16 at 12-15.] Specifically, Plaintiff contends the ALJ’s credibility determination[6] focused primarily on her use of a cane and did not address her testimony regarding her manipulative abilities or her incontinence, among other limitations. *Id.* at 13.

This is not the case. The ALJ found the Plaintiff’s testimony regarding these issues credible enough to include limitations in the RFC. Plaintiff concedes the ALJ “appeared to credit aspects of Plaintiff’s testimony.” [Dkt. 16 at 14.] Specifically, the ALJ noted (i) Plaintiff’s EMG showed severe large fiber sensorimotor polyneuropathy with primarily demyelinating findings affecting all four extremities consistent with type 2 diabetes [R. 25, referring to R. 87]; (ii) Plaintiff had problems using her hands while preparing meals and was unable to cut an onion [*Id.*, referring to R. 88]; (iii) Plaintiff did more instructing of family members than cooking when she prepared meals [*Id.*]; (iv) Plaintiff had not had treatment for her carpal tunnel syndrome [*Id.*, referring to R. 83]; and (v) Plaintiff’s neurologist was more focused on her legs than her hands [*Id.*, referring to R. 82-83]. The ALJ further noted Plaintiff (i) wears adult protective undergarments for urinary and fecal incontinence [R. 28, referring to R. 90]; (ii) does not know if the incontinence is related to her menstrual cycle, as it happens roughly once a month [R. 25, referring to R. 91]; and (iii) went

---

6 The Court recognizes that “credibility determination” is perhaps an outdated term of art (*compare* the old SSR 96-7P *with* the updated SSR 16-3P, which applies to decisions made on or after March 28, 2016), but the Seventh Circuit has still consistently affirmed that ALJ’s credibility assessments are so important as to be entitled to “special deference” because an ALJ is in the best position to see and hear the witness and determine credibility. *See*, *e.g.*, (all citing *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)): *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *7 (7th Cir. Aug. 27, 2021); *Gladney v. Saul*, No. 20-1184, 2021 WL 1595442 (7th Cir. Apr. 23, 2021); *Apke v. Saul,* 817 F. App’x 252, 257 (7th Cir. 2020); *Matthews v. Saul*, 833 F. App’x 432, 438 (7th Cir. 2020).

to the urologist and was told everything was fine. [*Id.*] Plaintiff argues the ALJ should have considered this testimony credible in making the RFC determination. But the ALJ *did* consider this testimony, and clearly found it partially credible, which is why she provided a limitation within the RFC for frequent handling and fingering and considered whether a limitation was appropriate for the use of adult protective undergarments (ultimately finding it was not). [R. 29.] To the extent she did not go further and add additional limitations, it was because she found Plaintiff's statements inconsistent with medical evidence in the record. [R. 25.] Although Plaintiff claims the ALJ never explained what evidence she relied on when making the credibility determination [Dkt. 16 at 13], it is clear to the Court the ALJ relied on: (1) evidence that medical examinations for both issues were inconsistent;[7] (2) evidence that Plaintiff never followed up on treatment for either issue [R. 20]; and (3) Plaintiff's lack of evidence beyond her own testimony showing her ability to work was impaired [*Id.*]. The Seventh Circuit merely requires "ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). The ALJ met this burden by flagging Plaintiff's statements were inconsistent with medical evidence and discussing such evidence. *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023) ("[W]e review credibility determinations with even more deference—we reverse only those determinations that are 'patently wrong.'").

With respect to Plaintiff's contention that the ALJ was overly focused on Plaintiff's use of a cane [Dkt. 16 at 13], while true that a great deal of effort was laid out to address Plaintiff's

[7] For example, a March 2022 examination revealed Dupuytren's contracture of the left hand [R. 602], while a March 2023 examination reported no issues with bilateral motor skills [R. 1537]. Similarly, a November 2021 ultrasound revealed a small fibroid possibly related to Plaintiff's incontinence [R. 1939-40], but an August 2022 examination revealed complete bladder evacuation [R. 536].

credibility regarding her walking ability [R. 26-28], this does not negate the fact the ALJ did address Plaintiff's testimony regarding her hands and her incontinence as mentioned above.

Similarly, with respect to Plaintiff's claim that "the ALJ did not discuss the reasons for Plaintiff's noncompliance [with medication/treatment] even though she considered the purported noncompliance when evaluating the Plaintiff's credibility" [Dkt. 16 at 14], the Court finds the ALJ adequately addressed this point as well. The ALJ noted Plaintiff often failed to comply with treatment for her diabetes by either not taking her medication or eating properly. [R. 28.] When the ALJ asked Plaintiff her reasons for noncompliance, Plaintiff stated she had been without insurance for a period of four months, between November 2020 and February 2021. [R. 73.] The ALJ mentioned this in her opinion [R. 28], and she did explore Plaintiff's explanations as to the lack of medical care in the Administrative Hearing as SSR 16-3p requires. SSR 16-3p, 2017 WL 5180304 at *9. The ALJ further noted Plaintiff's medication noncompliance spanned years [R. 28], and thus this period of noncompliance would not be accounted for by the four-month period she was uninsured. [R. 26-28.] Additionally, Plaintiff's Dupuytren's contracture and incontinence symptoms were not documented until well after she was back on insurance, in March 2022 and November 2021, respectively. [R. 602; R. 1939-40.] Plaintiff's reasons for noncompliance[8] did not sufficiently address the noncompliance existing in the medical record, and the ALJ appeared to take this into account when making her credibility determination.

For these reasons, the Court finds the ALJ properly evaluated Plaintiff's testimony and credibility when considering Plaintiff's symptoms and declines to remand on this basis.

---

[8] Plaintiff mentioned another reason for noncompliance with her diabetes management—she was reportedly unable to check her blood sugar because of pain and neuropathy in her hands. [Dkt. 16 at 14]. However, the record refers to a Dexcom continuous glucose monitor relieving these symptoms, and she had a Dexcom by at least May 2022. [R. 1948, R. 1863]. Additionally, this reason for noncompliance does not address Plaintiff's failure to follow up with a hand surgeon, which the ALJ noted. [R. 20.]

**5. Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment [Dkt. 15] is DENIED and Defendant's motion for summary judgment [Dkt. 19] is GRANTED. The final decision of the Commissioner is affirmed.

**ENTERED: August 19, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge